# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

REGINALD V. JOHNSON, II,    )
                        )
      Plaintiff,         )
                        )
v.                      )      CV418-50
                        )
JUDY FITZGERALD,     )
COMMISSIONER, GEORGIA  )
DEPARTMENT OF BEHAVIORAL )
HEALTH AND DEVELOPMENTAL )
DISABILITIES,         )
                        )
      Defendant.      )

FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 10:23 am, Dec 20, 2018

## ORDER AND REPORT AND RECOMMENDATION

Reginald Johnson, acting through his mother, Ella Johnson, has filed a Complaint seeking injunctive relief arising from the withdrawal (or threat of withdrawal) of financial support by the Georgia Department of Behavioral Health and Developmental Disabilities (the "Agency"). Doc. 1 at 2; doc. 10 at 3. The Court performed the preliminary screening required by 28 U.S.C. § 1915(e)(2), recommending that Ella be provisionally designated as his *guardian ad litem*, dismissing the originally-named state agency and his claim for punitive damages, and directing the United States

Marshall to serve his Complaint on Commissioner Fitzgerald, in her official capacity. *See* doc. 12.

Johnson timely objected to the recommendation that his claims for damages be dismissed. Doc. 14. The recommendations were adopted, over those objections, by the District Judge. Doc. 16. Johnson then filed a notice of appeal.[1] Doc. 18. While the appeal was pending, the Commissioner answered, doc. 23, and Johnson filed a "motion" seeking an injunction directing the Commissioner to reinstate the disputed benefits. Doc. 27. He now seeks an "expedited" ruling on that motion, and objects to the Court's granting a leave of absence to defense counsel. Doc. 37. The Court entered a Scheduling Order. Doc. 38. Johnson filed a motion for a "pre-scheduling order hearing," to address her "Request to Expedite

---

[1] In many circumstances, the filing of a notice of appeal divests the district court of jurisdiction. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Out of an abundance of caution, the Court withheld disposition of motions filed after the notice of appeal. The Court of Appeals found that it lacked jurisdiction over the matter, as the order appealed from was not final. *See* doc. 28. Given that finding, it appears that this Court was never divested of its jurisdiction. *See Griggs*, 459 U.S. at 58 (citing *Ruby v. Secretary of the United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (noting "notice of appeal from unappealable order does not divest district court of jurisdiction"). Plaintiff's report of the parties' recent conference indicates that Johnson has filed a motion for reconsideration of that ruling. *See* doc. 33 at 3.

Injunction Order." Doc. 40. This Order addresses that request, among other issues.

A hearing on Johnson's request for an "expedited" disposition of his request for an injunction is not necessary. The Georgia Attorney General's Office, representing Fitzgerald, construed that request as a request for a preliminary injunction. Doc. 41. The Court agrees with that interpretation.[2] The Court further agrees with defendant's argument that Johnson's filings, to date, are inadequate to establish his entitlement to such extraordinary relief. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) ("In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." (quotes and cites omitted)). On the contrary, the defendant's

---

[2] The nature of Johnson's request is not entirely clear because his representative apparently takes the position that the claims are sufficiently developed for the Court to enter judgment in his favor. *See* doc. 37 at 2; *see also* doc. 29 at 3 (stating that "Plaintiff's representative questions [the] need for discovery as the issue being brought in [the] complaint is one of due process for Medicaid which has been established by law and case precedent."). Regardless of Ella's contentions, the Court does not summarily decide cases without allowing *both* parties an opportunity to conduct discovery and be heard on the merits. The Federal Rules provide for *limited* remedies before judgment. *See* Fed. R. Civ. P. 65. Given that Johnson's filings suggest an argument for a preliminary injunction, *i.e.* that Johnson is presently suffering harm from the Commissioner's withholding of "self-directed" benefits, doc. 27, the Court agrees with the Commissioner that his motions are best construed as requests for a preliminary injunction directing the reinstatement of the disputed benefits.

brief presents facially persuasive arguments that Johnson *cannot* bear that extraordinary burden. *See* doc. 41.

For the reasons discussed more fully below, the Court questions whether Johnson could demonstrate his entitlement to injunctive relief. It is clear that, to date, he has not. A plaintiff seeking a preliminary injunction must establish (1) *a substantial* likelihood of success on the merits of his claim; (2) *irreparable* injury unless the injunction issues; (3) that the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the sought injunction would not be adverse to the public interest. *See Robertson*, 147 F.3d at 1306. Johnson's injunction-related filings do not establish either his *substantial* likelihood of success or that he will suffer an *irreparable* injury if an injunction immediately reinstating the disputed benefits is not issued. *See* doc. 2; doc. 27; doc. 37; doc. 42. They do not even discuss the balance of harm or the public interest. *See id.*; *but see* doc. 42 at 3-4 (asking, rhetorically, "how does the quality of human life not outweigh any other earthly consideration?" and protesting that the assertion that "this is NOT a public issue is baffling," and speculating about the possibility that "others [may have been] denied [their] civil

rights to due process because that individual did not know any better or did not have the means to fight back"). Although the Court construes Johnson's pleadings liberally, that liberality does not exempt him from the applicable procedural rules, and it most certainly does not expand his substantive rights. *See Clark v. Bibb Cty. Bd. of Educ.*, 174 F. Supp. 2d 1369 (M.D. Ga. 2001) (citing *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003)); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1999)) ("[T]he general rule of liberal construction does not require courts to exempt pro se litigants from complying with the requirements imposed by the relevant rules of procedure and substantive law."). To the extent that Johnson seeks a preliminary injunction directing the Commissioner to immediately reinstate the disputed benefits, his motions should be **DENIED**. Doc. 2; doc. 27; doc. 37. His request for a hearing on the issue is, therefore, **DENIED as moot**. Doc. 40.

The parties' filings raise several further issues that must be resolved. In its Report and Recommendation authorizing service of the Complaint, the Court provisionally approved Ella to serve as plaintiff's *guardian ad*

*litem* in this matter. Doc. 12 at 6-7. The Court noted, however, that an apparent conflict of interest between plaintiff and Ella might require it to revisit that approval. *Id.* at 7. Commissioner Fitzgerald, in her answer and brief opposing a preliminary injunction, specifically disputes Ella's suitability as *guardian ad litem*. *See* doc. 23 at 4; doc. 41 at 6-7. In response to the Commissioner's Answer, Ella protests that she is suitable, based on her affection for her child and her concern that he might "be deprived just because he is incapable of making the request [that his benefits be restored]." Doc. 25 at 3. Her suitability to serve as Plaintiff's representative, however, does not turn on her affection for him or her devotion to his care.

The propriety of Ella's representation of plaintiff depends, in the first instance, on whether she has been legally appointed as plaintiff's guardian. *See* Fed. R. Civ. P. 17(c)(1); *see also Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 85 (1st Cir. 2010) ("[W]here a minor or incompetent is represented by a general guardian or a duly appointed representative," the Federal Rules' provisions for designating a *guardian ad litem* need not be applied). If he has another duly appointed representative, the Court would consider whether that individual were better situated to pursue his

interests in this matter. Even if she were duly appointed, however, the Court has the power "'to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent.'" *Id.* (quoting *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir 1989)). "The minor's best interests are of paramount importance" in making the determination. *Id.*

The Court is particularly concerned by the Commissioner's contention that it has not "withdrawn" any benefits from plaintiff, it has merely insisted that he receive those services from a provider other than Ella's sister. *See, e.g.,* doc. 23 at 8. Any disruption in the provision of services, she thus contends, is attributable to Ella's refusal to choose a non-familial caregiver and not to any action or lack of it by the Department. *See* doc. 33 at 8 (asserting "Plaintiff need not experience any lapse in service during the pendency of this litigation. Community-based services are fully available to Plaintiff under the applicable Medicaid waiver program, but Ms. Johnson has actively refused to select any of the community care providers offered by [the Department] for care of

Plaintiff."); *see also* doc. 12 at 6 (noting the Court's concern that Ella is not a suitable representative because "she might be less inclined to accept a resolution that does not protect her sister's income (and given that her sister lives with her, it seems possible that some portion of that income might go to Ella, albeit mediately)."). Although the Court appreciates Ella's contention that the services offered are not adequate substitutes for the services Reginald was receiving, *see* doc. 39 at 1, the fact that she considers no services preferable to some services, even if defective, emphasizes her potential conflict of interest.

In addition to the question of Ella's suitability to act as plaintiff's representative, further questions have arisen concerning the viability of his claim. In a recent filing, Johnson contends that "due process is the core of this complaint." Doc. 37 at 2. The cited cases, however, make clear that not *every* withdrawal or refusal of public benefits violates a recipient's due process rights. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972 (9th Cir. 2015). None of the cases that plaintiff has cited, and none that the Court is aware of, establish that a benefit recipient has a sufficient interest in a particular method of service-delivery to support a due process challenge. Although defendant's brief opposing the preliminary injunction

touches tangentially on the nature of Johnson's claim, in arguing that he has not established the likelihood of success necessary, defendant has not moved to dismiss or challenged his standing. *See* doc. 41 at 9-12.

The nature of Plaintiff's claim matters because it calls into question his standing, whether litigated through a *guardian ad litem* or otherwise, to prosecute this case. *See, e.g., Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1181 (S.D. Fla. 2000) (noting, despite terminological similarity, a "[p]laintiff's standing is a distinct inquiry from that of [his guardian's] capacity to act as Plaintiff's next friend [or *guardian ad litem*].").  Standing is a component of the Constitution's limitation of federal judicial power to "cases" and "controversies." *See Allen v. Wright*, 468 U.S. 737, 750 (1984).  As an aspect of this constitutional limitation, standing determines this Court's jurisdiction.  It cannot be waived by any party and the Court has an obligation to raise the issue on its own motion, if necessary. *See Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 877-78 (11th Cir. 2000) (as the Supreme Court made clear in *United States v. Hays*, 515 U.S. 737[, 742] . . . (1995), "[t]he question of standing is not subject to waiver . . . . 'The federal courts are under an independent obligation to

examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'").

To establish standing, "for purposes of . . . procedural due process[3] claims, plaintiffs must show that they had an identifiable personal stake in the property [or liberty] rights at issue." *Santiago-Ramos v. Autoridad de Energia Electrica de Puerto Rico, AEE*, 834 F.3d 103, 106 (1st Cir. 2016) (footnote added); *see also Doe v. Florida Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (plaintiff alleging due-process violation must allege "a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."); *Royal Oak Entertainment, L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 486 (6th Cir. 2009) ("This Court has consistently held that a plaintiff who brings a . . . procedural due process claim must identify a protected liberty or property interest." (cite omitted)). Further, the assertion that a due-process violation has occurred is not a factual allegation the Court is required to

---

[3] The legal authorities cited below are scrupulous in identifying the claim at issue as a denial of "procedural due process," to distinguish it from deprivations of "substantive due process." The location of certain substantive constitutional protections, for example the right to privacy against government intrusion into certain intimate areas of life in the Fifth and Fourteenth Amendments' due process clauses, is a legal minefield the Court is, mercifully, not required to cross in this case. Since there is no plausible implication of any substantive due process issue here, the Court will refer to the claim as simply one for denial of "due process."

credit.  *See Lord Abbett Mun. Income Fund v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (citing *Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) ("We are not required to accept as true the [plaintiff's] legal conclusion that a Fourteenth Amendment violation occurred.")).

The Supreme Court has held that no constitutionally-protected liberty or property interest supported nursing home residents' suit seeking a hearing before their home's Medicaid funds were terminated. *See O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 784 (1980). *O'Bannon* rejected the both the argument that the residents had "a property right to remain in the home of their choice absent good cause for transfer," and that the emotional and physical consequences of their transfer were "tantamount to a deprivation of liberty."  *Id*.  The Court noted that "since decertification [of a particular home] does not reduce or terminate a patient's financial assistance, *but merely requires him to use it for care at a different facility*, regulations granting recipients the right to a hearing prior to a reduction in financial benefits are irrelevant."  *Id.* at 786 (emphasis added).  Although more qualified, it also found that an administrative determination, directed against a third party, does not implicate due process.  The Court analogized the effect of the

government's decision to withhold public funds from a particular provider to the revocation of a provider's license. *Id*. at 787. Similarly, whether the Department will continue to compensate Ella's sister for the care she provides to plaintiff arguably "does not turn the [refusal] into a governmental decision to impose [the] harm" that such cessation would cause. *See id.* at 789.

If, as defendant contends, *O'Bannon* stands for the proposition that "[t]here is no constitutional right to a hearing prior to [a determination that a particular benefit provider is not eligible under the applicable program]," then Johnson lacks standing to pursue a due-process claim. Plaintiff's argument that *O'Bannon* is distinguishable because "it was NEVER established that the services received from one nursing facility could not be provided by another nursing facility," doc. 42 at 3, fails to address the Court's discussion of the resident's purported liberty interest. The Court expressly considered the harm residents faced because they "may have difficulty locating other homes *they consider suitable* or *may suffer both emotional and physical harm* as a result of the disruption associated with their move." *O'Bannon*, 447 U.S. at 787 (emphasis added). Despite those harms, the Court concluded, "while they might have a claim

against the [care provider, depending on the nature of the parties' contract and applicable state law,] for damages, *none* would have *any claim against the responsible governmental authorities for the deprivation of an interest in life, liberty, or property*." *Id.* (emphasis added). As discussed below, plaintiff's further briefing on this issue must identify a relevant due-process-protected interest, and, if necessary, explain how *O'Bannon*'s conclusion that (1) a claimant's determination of the "suitability" of alternative providers and (2) the "physical and emotional harm" caused by the necessity of changing providers are not sufficient to confer standing does not resolve this question.[4]

The legal status of Reginald's prospective injuries can, alternatively, cast doubt on the claim's substantive adequacy. Since he is proceeding *in forma pauperis*, the Court has an obligation to dismiss the case "at any time if [it] determines that . . . the action . . . fails to state a claim on which

---

[4] Among the arguments raised in plaintiff's recent briefs, the Court wishes further argument on the question of whether the Department's previous approval of Ella's sister as a service provider could affect whether he has a due-process interest in her continued provision of services. In particular, the parties must address the Supreme Court's recognition that, while a statutory provision of benefits may grant a recipient "a right to continued benefits to pay for care [from an approved provider, *he has no enforceable expectation of continued benefits to pay for care* [from a provider] *that has been determined to be unqualified*," *O'Bannon*, 447 U.S. at 786 (emphasis added), resolves the question.

relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Fortson v. Georgia*, 601 F. App'x 772, 774 (11th Cir. 2015) (noting that "[a] judge's authority to dismiss sua sponte a complaint . . . is provided for, even mandated, by" § 1915(e)(2)(B)'s subsections); *Shell v. Foulkes*, 362 F. App'x 23, 26 (11th Cir. 2010) (§ 1915 "serves an important gate-keeping function by requiring the district court to *sua sponte* dismiss an action that fails to state a claim on which relief may be granted.").

Although the Court authorized service of the Complaint, the Commissioner's subsequent filings and Ella's responses to them have cast considerable doubt on the viability of Reginald's claim. They have clarified that it is based on an alleged violation of his right to due process. As discussed above, such a claim requires, as an essential element, an allegation that the plaintiff has been deprived of a constitutionally protected liberty or property interest without due process. His subsequent pleadings appear to concede that the Department has not refused to provide benefits, nor has it reduced or proposed reduction of the benefits he receives. Rather, the parties dispute whether Reginald may direct those benefits to a particular provider, *i.e.* Ella's sister. His further contention that, in the particular factual context of this case, those services could not

be replaced by otherwise comparable services from another provider, does not establish that his interest in securing the benefits of continued service, or avoiding the harms associated with changing providers, is *constitutionally* protected.  In the absence of such an allegation, Reginald's claim substantively fails, even if he has standing to assert it.

Since both the question of Ella's suitability as representative and the question of whether any of Reginald's constitutionally protected rights has been violated must be resolved before this case can proceed, the Court will proceed in the following order.  Since the question of Ella's suitability is moot if Reginald lacks a constitutionally protected interest in the dispute at issue, the Court will first consider that question.  The parties are **DIRECTED** to submit written arguments on the existence and nature of the right asserted within thirty days of the date of this Order.

In order to ensure that the parties' arguments are properly focused, the Court wishes to emphasize that a legal proceeding is *not* a determination of value or importance.  Many of plaintiff's filings to date have emphasized the clear emotional stakes of this case.  The Court does not doubt Ella's sincerity in those statements, and does not minimize the potential consequences plaintiff may face if the Department determines

that he cannot continue to receive the care he has received.  Nevertheless, the *legal* questions before the Court cannot be determined on the basis of such considerations.  The question of plaintiff's standing is no more and no less than whether the law recognizes his right to continue to receive services in the manner he has been receiving them.

The remaining issues in this case, Ella's suitability and her concerns about the applicable deposition procedures, will only be addressed if plaintiff's standing and the viability of his claim is established.  Pending resolution of those issues, all discovery in this case is **STAYED**.  If the case proceeds, plaintiff, through his duly-appointed representative, may refile any motions deemed necessary.  The Clerk is **DIRECTED** to **TERMINATE** the pending motion.  Doc. 43.

Finally, Ella has filed a "Motion for Protective Order" asserting objections to several of the Commissioner's discovery requests.  Doc. 48.  This motion is premature and fails to comply with either the Federal Rules' or this Court's Local Rules' pre-filing requirements.  Both the Federal and Local Rules require that the parties attempt to resolve any discovery dispute without the Court's intervention *before* any party files a discovery motion.  *See* Fed. R. Civ. P. 26(c)(1) (requiring "a certification

that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."); S.D. Ga. L. Civ. R. 26.5. Because Johnson has not complied with those requirements, his motion is **DISMISSED**. Doc. 48. He is, however, free to refile any discovery motion he deems appropriate (after the stay is lifted), subject to compliance with the Rules' requirements. The Court advises Johnson, and his representative, that pressing meritless objections may subject him to the Federal Rules' *mandatory* fee shifting provisions. *See* Fed. R. Civ. P. 26(c)(3), 37(a)(5). In plain English: if Johnson pursues meritless discovery objections through a motion for protective order, he and his representative may be required to pay any reasonable legal fees the Commissioner incurs in responding to that motion. The Court advises Ella to apprise herself of the applicable case law concerning the scope of viable objections based on relevance[5] or undue burden.

---

[5]  In particular, the Court advises her that "immaterial" or "irrelevant," in the discovery context does not encompass any subject that the party responding to the discovery requests (*i.e.*, Ella) thinks is irrelevant to the claims as she conceives them. As this Court has explained:

> The discovery standard for relevance is quite liberal. In fact, the higher, *trial* "standard for what constitutes relevant evidence [itself] is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). . . . So Rule 26, "quite simply,

In summary, plaintiff's request for a preliminary injunction should be **DENIED**. Doc. 2; doc. 27; doc. 37. Her request for a hearing on the appropriateness of such an injunction is **DENIED**. Doc. 40. Within thirty days, the parties each must submit their arguments concerning the existence and nature of the constitutionally protected right at issue. Pending resolution of that issue, all discovery deadlines in this case are **STAYED** until further Order from the Court. The Clerk is **DIRECTED** to **TERMINATE** his pending discovery motion. Doc. 43. Plaintiff's Motion for a Protective Order should be **DENIED**, subject to refiling pending a lifting of the stay and plaintiff's satisfaction of the pre-filing conditions.

**SO ORDERED and REPORTED AND RECOMMENDED**, this 19th day of December, 2018.

_[signature]_

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

sets for a _very_ low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it."

_McCleod v. Nat'l R.R. Passenger Corp._, 2014 WL 1616414 at * 3 (S.D. Ga. 2014) (some citations omitted). Plaintiff, however, has the same opportunity to investigate defendant's claims in her own discovery.