# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| REGINALD V. JOHNSON, II, | ) |
| Plaintiff, | ) |
| v. | ) CV418-50 |
| JUDY FITZGERALD, COMMISSIONER, GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES, | ) |
| Defendant. | ) |

## ORDER AND REPORT AND RECOMMENDATION

Reginald Johnson, acting through his mother, Ella Johnson, has filed a Complaint challenging a determination that his preferred service provider, who is also Ella's sister, is not an eligible provider. *See* doc. 1 at 2; doc. 10 at 3. In order to clarify plaintiff's claim, the Court stayed this case and directed the parties to brief the question of whether the Complaint sufficiently invoked any constitutionally protected right to

1

confer standing to sue on the plaintiff. *See* doc. 57 at 18. The parties have complied. Docs. 61 & 65.[1]

As the Court's previous Order and Report and Recommendation explained:

> [Q]uestions have arisen concerning the viability of [plaintiff's] claim. In a recent filing, Johnson contends that "due process is the core of this complaint." Doc. 37 at 2. The cited cases, however, make clear that not *every* withdrawal or refusal of public benefits violates a recipient's due process rights. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972 (9th Cir. 2015). None of the cases that plaintiff has cited, and none that the Court is aware of, establish that a benefit recipient has a sufficient interest in a particular method of service-delivery to support a due process challenge. Although defendant's brief opposing the preliminary injunction touches tangentially on the nature of Johnson's claim, in arguing that he has not established the likelihood of success necessary, defendant has not moved to dismiss or challenged his standing. *See* doc. 41 at 9-12.
>
> The nature of Plaintiff's claim matters because it calls into question his standing, whether litigated through a *guardian ad litem* or otherwise, to prosecute this case. *See, e.g., Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1181 (S.D. Fla. 2000) (noting, despite terminological similarity, a "[p]laintiff's standing is a distinct inquiry from that of [his guardian's] capacity to act as Plaintiff's next friend [or *guardian ad litem*]."). Standing is a component of the Constitution's limitation of federal judicial power to "cases" and "controversies." *See Allen v. Wright*, 468 U.S. 737, 750 (1984). As an aspect of this constitutional limitation, standing determines this Court's jurisdiction. It cannot be waived by any party and the Court has an obligation to

---

[1] Plaintiff's request for an extension to acquire a copy of defendant's supplemental brief is **DISMISSED as moot**. Doc. 63.

raise the issue on its own motion, if necessary. *See Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 877-78 (11th Cir. 2000) (as the Supreme Court made clear in *United States v. Hays*, 515 U.S. 737[, 742] . . . (1995), "[t]he question of standing is not subject to waiver . . . . 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'").

To establish standing, "for purposes of . . . procedural due process[. . .] claims, plaintiffs must show that they had an identifiable personal stake in the property [or liberty] rights at issue." *Santiago-Ramos v. Autoridad de Energia Electrica de Puerto Rico, AEE*, 834 F.3d 103, 106 (1st Cir. 2016) (footnote added); *see also Doe v. Florida Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (plaintiff alleging due-process violation must allege "a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."); *Royal Oak Entertainment, L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 486 (6th Cir. 2009) ("This Court has consistently held that a plaintiff who brings a . . . procedural due process claim must identify a protected liberty or property interest." (cite omitted)). Further, the assertion that a due-process violation has occurred is not a factual allegation the Court is required to credit. *See Lord Abbett Mun. Income Fund v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) ("We are not required to accept as true the [plaintiff's] legal conclusion that a Fourteenth Amendment violation occurred.")).

The Supreme Court has held that no constitutionally-protected liberty or property interest supported nursing home residents' suit seeking a hearing before their home's Medicaid funds were terminated. *See O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 784 (1980). *O'Bannon* rejected the both the argument that the residents had "a property right to remain in the home of their choice absent good cause for transfer," and that the emotional and physical consequences of their transfer were "tantamount to a deprivation of liberty." *Id*. The Court noted that "since decertification [of a particular home] does not reduce or terminate a patient's financial assistance, *but merely requires*

*him to use it for care at a different facility*, regulations granting recipients the right to a hearing prior to a reduction in financial benefits are irrelevant." *Id*. at 786 (emphasis added). Although more qualified, it also found that an administrative determination, directed against a third party, does not implicate due process. The Court analogized the effect of the government's decision to withhold public funds from a particular provider to the revocation of a provider's license. *Id*. at 787. Similarly, whether the Department will continue to compensate Ella's sister for the care she provides to plaintiff arguably "does not turn the [refusal] into a governmental decision to impose [the] harm" that such cessation would cause. *See id*. at 789.

Doc. 57 at 8-13. Having considered the parties' arguments, the Court can now determine whether Johnson has standing to pursue his claim.

The Commissioner's argument focuses on the Supreme Court's analysis in *O'Bannon* to refute Reginald's standing. *See* doc. 61 at 4. The Commissioner argues that in this case, "[a]s in *O'Bannon*, DBHDD has not terminated or reduced the Medicaid benefits Plaintiff receives; rather, DBHDD simply maintains that Ms. Johnson's sister cannot be the particular provider to whom those benefits are directed." *Id*. The Commissioner further argues that the Department had no obligation to provide a hearing to the provider before revoking her eligibility.[2] *See id*.

---

[2] Although this argument casts further doubt on the viability of Johnson's claim, it is not strictly-speaking relevant. Johnson does not contend that he could pursue a due-process claim on behalf of the service provider. As no such claim has been asserted, the Court takes no position on what rights the provider might or might not have.

4

at 61. Finally, she argues that, even assuming Johnson had some due-process right, his mother "received a warning letter in 2016 detailing the policy violations that needed to be rectified[, and] . . . [she'] signed a memorandum of understanding regarding the terms and conditions of the . . . program that specified that the participant/representative may be terminated from the [provider] option *involuntarily* when the responsibilities of the . . . program are not met." *Id*. at 6.

Johnson responds by reiterating that his "complaint is based on his due process right to self-directed services which plaintiff had entitlement to a year prior to defendant approving family hire services based on defendant's finding that approval for such services were warranted." Doc. 65 at 1. He also disputes the Commissioner's construction of the correspondence that was exchanged, identifying discrepancies he contends "show[] even more deficiencies in the handling of its responsibility further supporting WHY due process in this matter is warranted." *Id*. at 2. Despite these arguments, the Commissioner has the law right.[3]

---

[3] In the interest of fidelity to the arguments presented, the Court has recited the parties' respective positions on the factual background of this dispute, specifically the disputed correspondence and memorandum of understanding. The Court's analysis below, however, does not rely *in any way* on an evaluation of those documents or arguments. The burden of establishing standing, whether challenged by an opposing party or investigated on the Court's own motion, rests with "[t]he party invoking

5

The Court wishes to emphasize that nothing in its determination of Johnson's ability to sue the Commissioner in this matter amounts to a determination concerning the validity of his or his mother's feelings about these circumstances. Nevertheless, this Court is bound to follow the law, and the law is that he cannot sue. The determinations most applicable to the facts of this case are simply not the general due process principles articulated in *Goldberg v. Kelley*, 397 U.S. 254 (1970)[4] which Plaintiff has consistently relied upon; they are the determinations reached in *O'Bannon*. Specifically, the Court's recognition that: "[t]he simple

---

federal jurisdiction," in this case, Johnson. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Johnson has not borne that burden, either as a matter of pleading or matter of proof. *See id*. (Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation.").

[4] The other case that plaintiff cites, *Cardinale v. Mathews*, 399 F. Supp. 1163 (D.D.C. 1975), is further off the mark. *See* doc. 65 at 2 (citing "Cardinale v. Mathews 1975"). That out-of-circuit district court opinion is not binding on this Court. *See, e.g., Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("While the decision of their fellow [district] judges are persuasive, they are not binding authority. [Cit.]. As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges."). Further, the facts of that case involved plaintiffs who "had their SSI benefits terminated or reduced without prior notice or an opportunity for a hearing." *Id*. at 1165. Although Johnson continues to characterize the Department's unwillingness to fund services from his chosen provider as a "removal" of benefits, nothing in his arguments supports that characterization. To be sure, removing a provider as an alternative diminishes the extent to which benefits are "self-directed," but, as *O'Bannon* makes clear, imposing such restrictions is not a withdrawal of the services themselves.

distinction between government action that directly affects a citizen's legal rights . . . and action that is directed against a third party and affects the citizen only indirectly or incidentally," precludes the relief plaintiff seeks. *O'Bannon*, 447 U.S. at 788. As in *O'Bannon*, "the fact that the decertification of a [particular provider] may lead to severe hardship for [Johnson] does not turn the decertification into a governmental decision to impose that harm." *Id.* at 789. Determinations of a particular provider's eligibility to receive public funds does "not directly affect [their] patients' legal rights or deprive them of any constitutionally protected interest in life, liberty, or property." *Id.* at 790. That principle applies despite the real risk that those patients, in general, and Reginald, in particular, may suffer serious hardship because of their disqualification.

In the absence of any apparent constitutionally protected interest, and given Johnson's emphatic assertion that his claim arises from his rights to due process under the Fifth and Fourteenth Amendments, the Court should find that he lacks standing. Accordingly, his Complaint should be **DISMISSED** for lack of subject-matter jurisdiction. Since he lacks standing, Johnson's "Motion for Summary Judgment," doc. 51, should be **DENIED**. The Commissioner's Motion to Compel discovery,

7

doc. 49, and Motion for Extension of Time to Respond to the summary judgment motion, doc. 54, are **DENIED as moot**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED and REPORTED AND RECOMMENDED**, this

10th day of September, 2019.

                                                                                                                  */s/ Christopher L. Ray*
                                                          CHRISTOPHER L. RAY
                                                          UNITED STATES MAGISTRATE JUDGE
                                                          SOUTHERN DISTRICT OF GEORGIA